THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY

*v.*

THE CHICAGO, PEORIA AND ST. LOUIS RAILWAY COMPANY.

*Filed at Mt. Vernon June 19, 1894.*

RAILROAD—*liability, on contract to transport engine of another company.* Where one railway company undertook to transport a locomotive of the plaintiff railway company to a certain point over its road, and the locomotive was placed on the defendant's road in charge of its conductor, and a fireman and engine-driver of the plaintiff operated the engine under the control of such conductor, their duties being merely mechanical, and they having no authority to say when the engine should start or at what station it should be side-tracked to allow trains of the defendant to pass, it was *held,* that if the engine was injured and destroyed while being transported, through the negligence of the defendant's conductor, the defendant was liable to the plaintiff for the loss.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Bond county; the Hon. B. R. BURROUGHS, Judge, presiding.

This was an action brought by the Chicago, Peoria and St. Louis Railway Company, against the Terre Haute and Indianapolis Railroad Company, to recover for the loss of a locomotive engine in a collision which occurred on the defendant's road on the 21st day of May, 1892. A trial in the circuit court resulted in a judgment in favor of the plaintiff for $3207.48, which, on appeal, was affirmed in the Appellate Court.

It appears from the record that on the 20th day of May, 1892, the appellee had two locomotive engines at East St. Louis, which, owing to high waters and wash-outs, it was unable to get out over its own line of road, whereupon application was made to appellant to transfer them over its road to Smithboro. An agreement was consummated by telegraphic correspondence, under which appellant agreed to run the engines from East St. Louis to Smithboro, over its road, for fifty cents per mile. Under this arrangement, on the morning

of May 21, 1892, engine No. 49 was placed on appellant's track at East St. Louis to be run to Smithboro. Appellant placed C. H. Smith, a conductor in its service, upon the engine to pilot or conduct it from East St. Louis to Smithboro. Foote, an engine-driver, and Benson, a fireman, both in the service of appellee, were placed on the engine to act in the capacity of engineer and fireman on the trip. After the engine left East St. Louis, at Highland station, the following order was received:

"*Special Order No. 1122.*

FROM TERRE HAUTE, *May 21, 1892.*
"*Conductor and Engineer J. S. E. 49:*

"You have until five thirty (5 :30) A. M. to run to Greenville against No. nine (9). Meet and pass No. twenty-nine (29) at Greenville.    R. B. W.

"Correct, 4 :58 A. M.——Smith.——Foote."

The engine got somewhat out of order, so that Greenville was not reached on time, and a stop was made at Pocahontas for from fifteen to twenty minutes to repair the engine, at which place No. 9 passed, going west, some nine miles distant west from Greenville. It seems that the engineer had no time table. Neither he nor the fireman had been over the road of appellant before, and knew nothing about the time of the trains. The conductor, Smith, had a time table, had been regularly running on the road, and knew the running time of the trains. As soon as No. 9 passed Pocahontas, going west, the conductor threw the switch and gave the engineer the signal to back out, and the run was commenced for Greenville, some nine miles distant. After going about three miles, along which there were several curves in the road, just after passing one of them a head-end collision occurred, about six o'clock A. M., with engine No. 17, drawing the "Diamond Special," a passenger train, which resulted in the demolition of engine No. 49. It appears from the evidence of the conductor,

Smith, that he knew that No. 9 was due at Greenville at 5:20 A. M., and that No. 17,—the Diamond Special,—was due there at 5:32 A. M.,—only twelve minutes thereafter. He was asked these questions: Q. "Well, now, you knew about its time (the time of No. 17, the Diamond Special,) at that time?" A. "I knew about it, but had forgotten it." Q. "You did not mention it to the engineer or fireman?" A. "No, sir." Q. "Who had control now of the engine this time in leaving and pulling out, if any one?" A. "I directed the movement of the engine."

Mr. W. H. Dowdy, and Mr. T. J. Golden, for the appellant.

Messrs. Morrison & Worthington, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This action was brought by appellee to recover for the loss of an engine, destroyed, as is alleged, through the negligence of the defendant, the appellant here. The appellant contracted with appellee to transport the engine over its road from East St. Louis to Smithboro for the sum of fifty cents per mile, appellee to furnish on the engine an engine-driver and fireman. The appellant received the engine on its line of road at East St. Louis, placed it in charge of a conductor, who had the management and control of the transportation from the point where it was received, to Smithboro, where, by the contract, it was to be delivered. There is no question in regard to the fact that the engine was destroyed through the negligence of those who controlled its running from East St. Louis to Smithboro, but it is contended that the entire management and control of the engine were in the hands of appellant, while, on the other hand, it is contended by the defendant that the engine was under the joint control of the servants of the plaintiff and defendant, and that the engine was destroyed through the joint negligence of the servants of the plaintiff and defendant.

Under the contract entered into between the two parties, it is plain that the appellant gave the appellee no power or authority to run its trains or engines over the road of appellant. There was no leasing of appellant's line of road for the purpose of allowing appellee to run an engine over any portion of appellant's road. Indeed, appellee had nothing to do with the transportation of the engine over appellant's road. It is true that appellee, when it delivered the engine to the appellant to be transported, furnished a fireman on the engine, whose duty it was to keep up proper fires, and an engine-driver to operate the engine. But the duties of these two parties were merely mechanical. They had no authority to say when the engine should start, what time it should make, where it should stop, or at what station it should be side-tracked to allow trains to pass. These were matters with which the engineer and fireman had nothing to do, and over which they had no control. These matters were in the hands of the conductor of the engine, assigned to that duty by appellant, and he was under the direction of appellant's train dispatcher. Thus the entire management and control of the engine in its transportation were in the hands of the appellant, and if loss occurred through the negligence of the servants of appellant in transporting the engine, no reason is perceived why appellant should not be held responsible for that loss. Had the conductor who controlled the running of the engine obeyed the order of the train dispatcher the collision would not have occurred. But he failed to do so.

In the argument some importance is sought to be attached to the fact that the order from the train dispatcher was directed to the conductor and engineer on the engine, but we do not regard that a matter of any special importance. The engineer had never been over the road before. He had no time card, knew nothing about the running of trains on the road, and relied entirely upon the conductor as to the running of the engine. When the engineer was directed by the conductor to

leave Pocahontas, he had no reason to suppose there was any danger of meeting a train, and so far as he had any knowledge there was no reason why he should refuse to obey the order of the conductor. But if it was the duty of the engine-driver to ascertain what the orders of the train dispatcher as to the running of the engine were, and if he was negligent in that regard, these facts would not prevent a recovery, for the reason that he had no voice whatever in the control of the engine. He was in charge as a mere operator of the engine, as directed by the servants of appellant.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*